United States District Court
Middle District of Florida
Jacksonville Division

SKY ENTERPRISES, LLC,

     *Plaintiff,*

V.                                          No. 3:16-CV-916-J-32PDB

OFFSHORE DESIGN & DRILLING SERVICES, LLC, ETC.,

     *Defendants.*

---

## Report & Recommendation

Plaintiff Sky Enterprises, LLC ("Sky"), alleges defendants Offshore Design & Drilling Services, LLC ("ODS"), Offshore Brokerage International, LLC ("OBI"), Philip Aldridge, and George Cammack carried out a "kickback" scheme relating to management of an upgrade of a rig destined for oil exploration in Nigeria.

The defendants move to dismiss the action for lack of personal jurisdiction or to transfer the action to the Southern District of Texas and offer supporting affidavits and other evidence.[1] Doc. 23 (motion to dismiss); Docs. 23-1–23-8 (affidavits and other

---

[1]The defendants also ask the Court to dismiss the action for improper venue under 28 U.S.C. § 1391(b), arguing Sky neither alleges nor establishes a substantial part of the events or omissions giving rise to the claim happened in Florida. Doc. 23 at 2, 21–22.

Section 1391(b) provides, "A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

evidence); Doc. 27 (reply); Docs. 31, 32 (supplemental authority). Sky opposes the motion and offers its own supporting affidavits and other evidence. Doc. 24 (opposition to motion to dismiss); Docs. 24-1–24-6 (affidavits and other evidence). The defendants also move to strike statements in the affidavits Sky offers. Doc. 28. Sky opposes that motion too. Doc. 29. The Court referred the motions for a report and recommendation under 28 U.S.C. § 636(b) and Local Rule 6.01(b). Doc. 30; *see also* docket entries following Doc. 30 and Doc. 32.

## I.    Background

Sky filed the original complaint in April 2016. Doc. 2. The defendants moved to dismiss that complaint for lack of personal jurisdiction, insufficient service of process, and improper venue. Doc. 5. Sky moved to conduct jurisdictional discovery, Doc. 6, and responded to the motion to dismiss, Doc. 8. The defendants opposed the motion to conduct jurisdictional discovery, Doc. 7, and moved to stay all discovery

---

28 U.S.C. § 1441(a) provides, "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

Section 1391 does not apply in removed actions. *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001). "Instead, § 1441(a), by requiring removal to the district court for the district in which the state action is pending, properly fixes the federal venue in that district." *Id.* "Thus, once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds." *Id.* "[A]s a matter of law, § 1441(a) establishes federal venue in the district where the state action was pending, and it is immaterial that venue was improper under state law when the action was originally filed." *Id.* at 1300. "This does not mean that a defendant in a removed action is left without options if it believes that the case can be better litigated and tried in another division or district." *Id.* The "defendant can seek a transfer under § 1404(a)." *Id.*

Sky filed the action in state court. Doc. 1-2. The defendants removed it to this Court. Doc. 1. In the removal notice, they recognized, "Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is located in this district." Doc. 1 ¶ 15. Because of the removal, venue is proper in this district, and the argument that venue is improper under § 1391 fails.

2

pending a decision on the motion to dismiss, Doc. 9. The Court permitted Sky to conduct jurisdictional discovery and supplement its response to the motion to dismiss and, without opposition, stayed merits discovery. Doc. 16.

The Court dismissed the original complaint without prejudice based on Sky's failure to allege sufficient facts to state claims, including Sky's failure to allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b). Doc. 21. Because the Court could not determine from the insufficient pleading if the Court possessed jurisdiction over the defendants, the Court did not decide the issue. Doc. 21 at 4−5. The Court permitted Sky to amend, continued the stay of merits discovery pending a case management and scheduling order, and directed:

> First, the parties should not number the paragraphs in their memoranda. Next, given this opportunity to amend, Sky should incorporate additional jurisdictional allegations and supporting facts in the amended complaint, including which provisions of the long-arm statute upon which it relies. Should Sky find itself responding to another motion to dismiss for lack of personal jurisdiction, Sky must specify which provisions of the Florida long-arm statute, Fla. Stat. § 48.193, and which theories of due process allegedly provide the Court with jurisdiction, which contacts or other evidence support Sky's case, and what case law applies. In its supplemental response, Sky appears to assert that a provision of the long-arm statute that it did not assert in its first response now applies, but never states as much. The supplemental response contains no citations to case law supporting Sky's arguments; in addition, Sky never clarified whether it was arguing that general jurisdiction under the long-arm statute now applies based on its additional discovery. It is also arguable that Sky did not respond to Defendants' arguments that they conflated contract and tort contacts, that the corporate shield doctrine applies, or that they failed to argue why the Court has jurisdiction over each defendant for each of the 23 counts.

Doc. 21 at 5–6 (footnote omitted).

Sky filed an amended complaint, Doc. 22, and exhibits, Docs. 22-1, 22-2. Sky contends the Court has specific jurisdiction over ODS, Aldridge, and Cammack under Fla. Stat. §§ 48.193(1)(a)(1) ("Operating, conducting, engaging in, or carrying on a

business or business venture in this state or having an office or agency in this state"), (a)(2) ("Committing a tortious act within this state"), (a)(6) ("Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state"), and (a)(7) ("Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state"), and over OBI under (a)(2).[2] Doc. 22 ¶¶ 3–6. The pending motion to dismiss, Doc. 23, and motion to strike, Doc. 28, followed.

The Court has not yet entered a case management and scheduling order, and dates suggested by the parties in an earlier case management report, Doc. 10, have passed.

## II.   Amended Complaint

To support seven causes of action, Sky alleges these facts in the amended complaint and exhibits.

Sky serves the "needs of the oil and gas exploration industry by providing various financial and managerial services on a project-specific basis." Doc. 22 ¶ 9.

Non-party Specialty Drilling Fluids, Ltd. ("Specialty"), is a Nigerian entity. Doc. 22 ¶ 10. Specialty bought a rig for an oil exploration project in Nigeria and engaged Sky to provide financial oversight and management of a multi-million-dollar

---

[2]In the amended complaint, Sky cites (a)(3) ("Owning, using, possessing, or holding a mortgage or other lien on any real property within this state") instead of (a)(1) but explains the citation to (a)(3) is a "typographical error" made obvious by the ordering of the provisions and use of the language in (a)(1). Doc. 24 at 4 n.1. In the reply to the response in opposition to the motion to dismiss or transfer, the defendants argue the failure to cite (a)(1) in the amended complaint "prejudices" them because Sky did not follow the amendment procedure in Federal Rule of Civil Procedure 15. Doc. 27 at 2. Because the Court may decide the motion to dismiss or transfer without addressing whether (a)(1) applies, the Court does not need to address the defendants' prejudice argument.

upgrade to the rig at a maritime construction facility in Louisiana, to begin in spring 2015. Doc. 22 ¶¶ 10, 11, 16, 17.

Defendant ODS represents it is a "'US-based rig design and drilling operations management company focused on providing quality services to the international offshore gas and oil industry'" and touts a "'highly experienced management team'" with "'more than 200 years of combined experience.'" Doc. 22 ¶ 13. To secure contractors, labor, materials, and personnel for the upgrade, Sky engaged in discussions with ODS through its principals, defendants Aldridge and Cammack. Doc. 22 ¶ 12. They made representations about their "professional abilities, capabilities, insight, reputation," and "'core value[s]' of 'integrity' and trustworthiness." Doc. 22 ¶ 14. Sky did not know then that the representations were "sheer fantasy" intended to induce Sky to retain ODS, Aldridge, and Cammack. Doc. 22 ¶ 15. The representations were important to Sky because Sky was considering ODS to lead management of the upgrade, and Sky relied on them. Doc. 22 ¶¶ 16, 17.

Through communications and other writings, including a March 10, 2015, email from non-party Ray Smith (a project manager), Sky retained ODS to manage the upgrade. Doc. 22 ¶ 19; Doc. 22-1. Under the terms, ODS, through its personnel (including Aldridge and Cammack), was responsible for supervising personnel and activities on site, creating a scope of work and estimate for time and necessary components and activities, identifying potential vendors, soliciting bids for products and services from potential vendors, selecting the best quote from potential vendors, recommending the best quote to Sky by submitting quotes and proposals to Sky, and coordinating with contractors and vendors for the procurement, delivery, receipt, and installation of purchased components and services. Doc. 22 ¶¶ 20, 21. Aldridge was responsible for reviewing and approving every purchase order, and his signature had to be on a purchase order before Sky would sign and issue it. Doc. 22 ¶ 20. Sky agreed to pay $2000 a day for Aldridge for field or office work and $1500 a day for Cammack for field or office work. Doc. 22 ¶ 23.

ODS, through Aldridge and Cammack, provided Sky assurance that ODS "was in fact functioning as Sky's eyes and ears at the project site and was operating as required in Sky's best interests." Doc. 22 ¶ 22. In 2015, Sky paid ODS around $1 million for services on the upgrade. Doc. 22 ¶ 24.

Unbeknownst to Sky, Aldridge and Cammack formulated and—from nearly the beginning of the project—implemented a scheme under which they would solicit bids from potential vendors for the upgrade, demand that the potential vendors inflate their quotes above the true costs of the goods or services in varying amounts based on percentages or personnel who did not exist or did not provide services, and require the potential vendors to pay Aldridge and Cammack the difference between the inflated amounts and the uninflated amounts. Doc. 22 ¶¶ 26–29, 38. If a potential vendor agreed to the scheme, Aldridge and Cammack recommended to Sky that Sky issue a purchase order for that potential vendor's goods or services and sent the inflated quote to Sky for approval knowing it was inflated but not disclosing that to Sky. Doc. 22 ¶¶ 30, 31.

Sky issued purchase orders for inflated goods and services. Doc. 22 ¶ 32. Upon receipt of payment from Sky, the vendors sent "kickback" payments directly to Aldridge and Cammack or paid OBI and OBI paid them. Doc. 22 ¶ 34. No part of any agreement with ODS contemplated payment by vendors to Aldridge or Cammack. Doc. 22 ¶ 37.

"There were various permutations, but in the end the [scheme] required false information from the vendors providing artificially inflated bids/quotes/or proposals." Doc. 22 ¶ 28. An "exemplar" concerns vendor Challenger International. Doc. 22 ¶ 28. Attached to the amended complaint are documents concerning Challenger: a spreadsheet listing quantities, items, descriptions, and uninflated amounts; a spreadsheet listing the same quantities, items, and descriptions but with inflated amounts and a notation, "from Philip for us to invoice him for"; an email from Cammack to someone at Sky stating, "Please create a PO for the subs and valves

detailed in the attached quote. Let me know if you have any questions"; an email from Aldridge to someone with Challenger stating, "We are pleased to be able to award Challenger with the attached items for immediate purchase based on your Final bid (Attached)[.] Please submit a formal quote to Mike Cammack for all of the items attached"; a purchase order by Sky, with approvals by Aldridge, Smith, and a representative of Specialty, for Challenger for the total inflated amount; an invoice from OBI to Challenger for the difference between the inflated total amount in the second spreadsheet and the uninflated total amount in the first spreadsheet (with an approval line for Cammack's signature); and a check from Challenger to OBI in the amount of that difference. Doc. 22-2; *see also* Doc. 23-1 at 4–5 (admissions by Sky concerning the Challenger matter).

Sky discovered the scheme in summer 2015 once it was in "full" operation and causing Sky "significant damage." Doc. 22 ¶ 35. Through an investigation, Sky learned Aldridge and Cammack told potential vendors they would not be selected if they did not participate in the scheme. Doc. 22 ¶ 36. Qualified, principled vendors were not awarded purchase orders and contracts for goods and services at non-inflated amounts, resulting in more expensive vendor contracts, delays in performance, and delays in delivery of work product. Doc. 22 ¶¶ 37, 39.

After Sky investigated the scheme and confirmed the "depth, extent, and veracity of the allegations and damage," it convened a meeting with the defendants. Doc. 22 ¶ 40. Sky advised them it had discovered the scheme and ended their further participation in the upgrade. Doc. 22 ¶ 41. Aldridge admitted the scheme and his involvement; Cammack declined to speak. Doc. 22 ¶ 42. Immediately after, Cammack remotely logged into a computer drive that housed Sky's project documents and began a "document dump" to try to "whitewash" evidence of the scheme. Doc. 22 ¶ 43. Sky recovered the information. Doc. 22 ¶ 43.

To salvage the project and minimize damage caused by the scheme, Sky retained an interim project manager to do the work ODS was supposed to do. Doc. 22 ¶ 44. There were still delays and damages. Doc. 22 ¶ 44.

Sky brings seven causes of action: (1) breach of contract against ODS; (2) negligent hiring and retention against ODS; (3) fraud against OBI, Aldridge, and Cammack; (4) conversion against OBI, Aldridge, and Cammack; (5) a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201−213, against all defendants; (6) civil conspiracy against all defendants; and (7) unjust enrichment against all defendants. Doc. 22. For some causes of action, Sky contends the defendants' actions in furtherance of the scheme are wrongful acts under Florida's "Wrongful Act Doctrine." Doc. 22 ¶¶ 78, 85, 99, 110; *see Rayburn v. Bright*, 163 So. 3d 735, 736–37 (Fla. 5th DCA 2015) (under the wrongful act doctrine, if a defendant wrongs the plaintiff and the wrongful act causes the plaintiff to litigate with a third person, the plaintiff may recover the litigation expenses as damages).

## III.   Motion to Strike

For the motion to dismiss or transfer, the defendants offer Sky's responses to requests for admissions, Doc. 23-1; Sky's answers to interrogatories, Doc. 23-6; three affidavits by Aldridge, Docs. 23-2, 23-4, 23-7; and three affidavits by Cammack, Docs. 23-3, 23-5, 23-8. In opposition, Sky offers two affidavits by Jean Bakkes, Docs. 24-1, 24-2; and emails, Docs. 24-3−24-6. Bakkes represents the affidavit statements are based on personal knowledge and "information and documents known and available to Sky." Doc. 24-1 ¶ 4; Doc. 24-2 ¶ 4.

Citing Federal Rules of Evidence 602 and 802 and two nonbinding cases addressing summary-judgment standards, the defendants seek to strike 23 paragraphs—most with compound sentences and multiple sentences—from Bakkes's affidavits on grounds they contain hearsay, are not based on personal knowledge, contain unsupported factual statements or legal conclusions, and are from someone

biased. Doc. 28 (citing *Clark v. Am. Fav. Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997), and *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988)).

Sky responds the statements are not hearsay because they are not offered to prove the truth of the matters asserted, the Court may consider any hearsay because Sky can reduce it to admissible evidence at trial, there is no reason the Court should reject Bakkes's representation the statements are based on personal knowledge or made as Sky's representative, no statement is a bare legal conclusion, the defendants provide no argument on bias, and bias goes only to weight. Doc. 29.

Denial of the motion to strike most of the paragraphs from Bakkes's affidavits is warranted. The motion—comprising a single page (with the introduction and conclusion omitted)—contains no real analysis;[3] identifies no hearsay statement that contradicts a non-hearsay statement by the defendants;[4] is in part unnecessary;[5] and, for paragraphs with compound sentences and multiple sentences, does not explain

---

[3]The motion contains no analysis of whether a proceeding in which a court is considering transfer to another district is a "miscellaneous proceeding" to which the Federal Rules of Evidence would not apply, *see* Fed. R. Evid. 1101, does not explain how the two nonbinding cases applying summary-judgment standards apply here, provides no analysis concerning Bakkes's asserted lack of personal knowledge or why he cannot speak for Sky as its sole member, and provides no analysis concerning how his presumed bias affects statements at this stage. *See generally* Doc. 28.

[4]In considering a motion to dismiss for lack of personal jurisdiction, if a defendant submits an affidavit statement that is not impermissible hearsay and the plaintiff responds with an affidavit statement that is impermissible hearsay, the court should not consider the statement that is impermissible hearsay unless a hearsay exception applies, *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009), or the statement can be reduced to an admissible form at trial, *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996).

[5]In the original affidavit, Bakkes states, "It has been represented to me by Defendants that all Defendants are citizens of the United States." Doc. 24-1 ¶ 6. The defendants ask the Court to strike the statement on many grounds, Doc. 28 at 2, but they themselves admit they are citizens of the United States, Doc. 23-2 ¶¶ 3, 4, 10; Doc. 23-3 ¶¶ 3, 4, 6; Doc. 23-4 ¶¶ 2–6; Doc. 23-5 ¶¶ 2–6; Doc. 23-8 ¶ 1.

which objection applies to which part.[6] *See generally* Doc. 28 at 2. Seeking to strike most of Bakkes's affidavits in this manner does not properly place the issues before the Court because it leaves the Court guessing the intended arguments and providing original analyses.

## IV.   Motion to Dismiss or Transfer

### A.   *Personal Jurisdiction*

#### 1.   *Framework*

A court must have personal jurisdiction—"power over the parties before it"—before it may resolve an action. *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017). The plaintiff must present a prima facie case of personal jurisdiction, which is enough to defeat a motion for judgment as a matter of law. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

A party may move to dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To decide a motion to dismiss for lack of personal jurisdiction, a court may (1) rely on complaint allegations; (2) rely on complaint allegations and affidavit statements; or (3) conduct an evidentiary hearing and find facts.[7] *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). Although a court may

---

[6]As one example, the defendants ask the Court to strike paragraph 23 of Bakkes's original affidavit on the grounds it contains hearsay, is not based on personal knowledge, contains unsupported factual statements or legal conclusions, and is from someone who is biased, Doc. 28 at 2, but paragraph 23 contains more than a dozen alleged facts to which all of the objections do not apply, *see* Doc. 24-1 ¶ 23.

[7]If a court chooses to conduct an evidentiary hearing, it "determines the credibility of witness testimony, weighs the evidence, and finds the relevant jurisdictional facts." *PVC*, 598 F.3d at 810. The findings may not decide the merits, and the parties must have sufficient opportunity to develop the record. *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).

Here, because there are few conflicting facts apart from the merits, an evidentiary hearing is unnecessary.

consider matters outside the pleading to decide if it has jurisdiction over a defendant, the entry of summary judgment on a motion challenging personal jurisdiction "is neither required nor authorized." *Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1501 n.1 (11th Cir. 1984).

If a court decides personal jurisdiction based on complaint allegations and affidavit statements, it must accept as true uncontroverted complaint allegations. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *Bracewell*, 748 F.2d at 1504. If a defendant submits an affidavit statement that conflicts with a complaint allegation, the plaintiff must respond with an affidavit statement supporting the complaint allegation. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). If the affidavit statements conflict, the court must credit the plaintiff's and draw all reasonable inferences in the plaintiff's favor, *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000), particularly if jurisdictional questions intertwine with the merits, *Delong*, 840 F.2d at 845. A legal conclusion warrants no consideration. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1276 (11th Cir. 2009).

2. *Facts to Decide the Motion to Dismiss*

Facts to decide the motion to dismiss follow. They are from uncontroverted allegations in the complaint, uncontroverted statements in the affidavits, and—for affidavit statements that conflict with each other—affidavit statements offered by Sky, with reasonable inferences in Sky's favor. Legal conclusions are excluded. *See Mazer*, 556 F.3d at 1276.

Sky is a Delaware limited liability company with its principal place of business in Florida, where it has an office, conducts business, and is authorized to conduct business. Doc. 22 ¶¶ 2, 11; Doc. 24-1 ¶¶ 2, 25; Doc. 24-2 ¶ 7. It also is authorized to conduct business in Louisiana. Doc. 23-1 at 4. It describes itself as "multi-national" and claims to own and trade assets in Nigeria, South Africa, and countries in North

America and Europe. Doc. 23-2 ¶ 5. Bakkes is its sole member and has managed it since its formation. Doc. 24-1 ¶ 2; Doc. 24-2 ¶¶ 2, 5. He is a permanent resident alien of the United States domiciled in Florida. Doc. 24-1 ¶ 7; Doc. 24-2 ¶ 6.

Defendants ODS and OBI are Texas limited liability companies with principal places of business in Texas. Doc. 22 ¶¶ 3, 4; Doc. 23-2 ¶ 3; Doc. 23-3 ¶ 3; Doc. 23-4 ¶¶ 4, 5; Doc. 23-5 ¶¶ 4, 5. Defendant Aldridge is the sole member and managing director of ODS, and defendant Cammack is the sole member and managing director of OBI. Doc. 23-2 ¶ 10; Doc. 23-3 ¶¶ 2, 6; Doc. 23-4 ¶¶ 2, 3; Doc. 23-5 ¶¶ 2, 3; Doc. 23-7 ¶ 2; Doc. 23-8 ¶ 1. They are Texas citizens. Doc. 23-2 ¶ 4; Doc. 23-3 ¶ 4; Doc. 23-4 ¶ 6; Doc. 23-5 ¶ 6. Besides contacts relating to this action, no defendant has a significant connection to Florida.[8]

Aldridge traveled to Florida and met with Sky representatives to discuss ODS's provision of management services for the upgrade and again later at Sky's "direct invitation" to negotiate terms of the agreement between Sky and ODS. Doc. 22 ¶¶ 12, 18, 19; Doc. 23-2 ¶¶ 6, 10, 11; Doc. 24-1 ¶¶ 15, 19. Aldridge and Cammack also emailed and telephoned Sky at its Florida office to induce Sky to award ODS the

---

[8]No defendant has ever resided in Florida; engaged in business in Florida; been required to maintain or maintained a registered agent for service of process in Florida; maintained a place of business in Florida; owned real or personal property in Florida; maintained a bank account, telephone number, or post-office box in Florida; been involved in any other lawsuit in Florida; advertised in Florida; or "engaged in solicitation or service activities" in Florida. Doc. 23-2 ¶¶ 15, 17; Doc. 23-3 ¶¶ 9, 11; Doc. 23-7 ¶¶ 3, 5, 18; Doc. 23-8 ¶¶ 4, 6, 20. ODS, Aldridge, and Cammack have never recorded a lien on real property in Florida; borrowed money secured by real property in Florida resulting in a mortgage; or had a lien recorded against real property in Florida owned by them. Doc. 23-7 ¶ 18; Doc. 23-8 ¶ 20. Neither OBI nor Cammack has had a client in Florida. Doc. 23-3 ¶ 10. Besides contact relating to this action, Aldridge has traveled to Florida for business only once (in 1989 as an employee of Diamond Offshore) and otherwise only for personal reasons eighteen times (to visit family and for vacation). Doc. 23-2 ¶¶ 13–14. Cammack has traveled to Florida only twice and only to visit Disney World. Doc. 23-3 ¶ 8. Sky has been ODS's only client or business contact in Florida, and Sky has been Aldridge's only business contact—personally or as an ODS representative—in Florida. Doc. 23-2 ¶ 16.

management-services contract. Doc. 24-1 ¶ 16. During that time, Sky investigated ODS, Aldridge, and Cammack through advertisements posted on their websites. Doc. 24-1 ¶ 17. Sky had had business dealings with ODS, Aldridge, and Cammack the year prior. Doc. 24-2 ¶ 8. Smith had encouraged Sky to discuss the provision of management services with ODS, Aldridge, and Cammack.[9] Doc. 24-1 ¶ 15.

The agreement between Sky and ODS is memorialized in several writings, including in a March 10, 2015, email specifying rates and responsibilities sent by Smith to Sky at its Florida office and to ODS representatives, Doc. 22 ¶ 19; Doc. 22-1; Doc. 24-1 ¶¶ 13, 14, 16, 20, and a contract providing, "This Contract was negotiated, signed and, therefore, shall be construed, governed, interpreted, enforced and litigated, and the relations between the parties determined, in accordance with the laws of the State of Delaware, or if applicable, general maritime law, excluding any choice of law rules which would refer the matter to the laws of another jurisdiction," and that ODS "shall" secure and maintain insurance satisfactory to Sky and specifies requirements if operations are "performed under Texas law" and different requirements if operations are "performed under Louisiana law." Doc. 23-2 at 10, 11, 14.

---

[9]The affidavits conflict concerning whether Smith was an agent of Sky or an agent of ODS. *Compare* Doc. 23-2 ¶ 11 (Aldridge's affidavit stating, "I traveled to the Jacksonville … area as the representative of ODDS because Ray Smith, an agent of Sky, requested that I, in the capacity of Managing Director of ODDS, meet with him and Sky in the Jacksonville area[.]") *with* Doc. 24-1 ¶ 15 (Bakkes's affidavit stating, "Defendants' affidavits also falsely identify Ray Smith as Sky's agent. … [H]e was more an agent to Defendants than Sky since it was Mr. Smith who encouraged Sky to discuss the project management duties being contracted to ODS, Mr. Aldridge and Mr. Cammack."). To his affidavit, Bakkes attaches a copy of a page from ODS's website indicating Smith is a team member. Doc. 24-1 ¶ 15. Sky also includes an email from Aldridge stating Smith "is a friend of mine who we worked with to get the job." Doc. 24-5 at 2. To the extent whether Smith is an agent of a party is not a legal conclusion, the Court must credit Bakkes's affidavit statement for the purpose of deciding the motion to dismiss, *see Ruiz*, 207 F.3d at 1356, though for which company Smith is an agent does not alter the recommendations in this report.

Engineering and construction occurred at the maritime facility in Louisiana and at facilities of vendors and service providers in Florida, Louisiana, and Texas. Doc. 22 ¶ 11. Aldridge and Cammack interacted with people and entities in Louisiana and Texas. Doc. 23-2 ¶ 25; Doc. 23-3 ¶ 21. Sky employees traveled to Texas at least three times and Louisiana at least five times to meet with the defendants about the upgrade, sometimes meeting with Cammack as ODS's contractor and representative. Doc. 23-3 ¶ 16; Doc. 23-6 at 5. Management occurred at the maritime facility in Louisiana and at Sky's office in Florida, with that office serving as the "hub of management activity." Doc. 22 ¶ 11; Doc. 24-1 ¶ 25. Financial management occurred at Sky's Florida office. Doc. 22 ¶ 11. All documents relating to project work were submitted to Sky's Florida office. Doc. 24-1 ¶ 25. In negotiating contracts for Sky with prospective vendors, ODS, Aldridge, and Cammack included venue selection clauses identifying Florida as the applicable law and jurisdiction. Doc. 24-6.

In dealings relating to the upgrade, the defendants contacted Sky through daily verbal, written, and electronic communications to Sky in Florida. Doc. 24-2 ¶¶ 9, 10. They "provided improperly inflated proposals, bids, and contracts"—including at least 25 "artificially inflated" proposals—to Sky's Florida office so Sky could finalize them and issue purchase orders. Doc. 22 ¶¶ 28–32; Doc. 24-1 ¶¶ 26, 28; Doc. 24-2 ¶ 11.[10] Sometimes, the information went to Specialty directly, sometimes to Specialty through Sky, and sometimes to Specialty through Smith. Doc. 23-7 ¶¶ 13, 14; Doc. 23-8 ¶¶ 15, 16. Sky received, reviewed, and issued most of the purchase orders in Florida based on inflated amounts the defendants provided. Doc. 22 ¶ 32; Doc. 24-1 ¶ 27. From offices in Nigeria, Specialty reviewed and finally approved vendors and invoices. Doc. 23-7 ¶ 12; Doc. 23-8 ¶ 14. After vendors delivered goods or services, Sky issued payments to them from Florida at the defendants' behest. Doc. 22 ¶ 33; Doc.

---

[10]Aldridge and Cammack contend even bids, quotes, or proposals they sent to Sky in Florida were recommendations only to Specialty as the rig owner. Doc. 23-7 ¶ 14; Doc. 23-8 ¶ 16.

24-1 ¶ 29. The computer drive Cammack allegedly entered to erase evidence of the scheme was in Florida. Doc. 22 ¶ 43.

Sky handled payments to ODS and other vendors, all payments by Sky came from Sky's bank accounts in Florida, and Sky often issued checks from its Florida office to the defendants based on invoices they sent to Sky in Florida. Doc. 24-1 ¶¶ 31, 33, 34. A March 27, 2015, email from Cammack, copied to Aldridge, states, "We are managing the reactivation of the Nabors BR-301 to go work a Shell contract in Nigeria. If awarded to Forum, the [purchase order] will be issued by our client SKY Enterprises, a Florida investment firm providing funding for the project." Doc. 24-4 at 2. A June 11, 2015, email from Cammack and copied to Aldridge states, "Your customer will be Sky Enterprises LLC in Florida." Doc. 24-3. A July 7, 2015, email from Aldridge states, "I am working for Sky Enterprises LLC out of Florida ([i]nvestment company)." Doc. 24-5 at 5. A July 8, 2015, email from Aldridge states Smith "is a friend of mine who we worked with to get the job. He is working on a part time basis to assist with the project," "ODS is the management company that is performing the upgrade to the rig and will provide future support," and "We all are working (being paid) by Sky."[11] Doc. 24-5 at 2.

The Challenger matter in the amended complaint was "one of many" examples of kickbacks. Doc. 24-1 ¶ 23; Doc. 24-1 at 16–17. In an April 21, 2015, email, Cammack, as Sky's project manager, sent Sky representatives in Florida the inflated

_____

[11]According to Aldridge's and Cammack's affidavits, Sky told ODS, Aldridge, and Cammack—and they understood—that Sky was providing only management services for the rig, Specialty owned and was financially responsible for the rig, ODS would not be paid until money came from Specialty, Sky paid sums to ODS and vendors on behalf of Specialty, and Sky would not be liable for paying ODS. Doc. 23-7 ¶¶ 9, 11, 12, 15–17; Doc. 23-8 ¶¶ 11, 13, 14, 17–19. To the extent there is a conflict between the affidavits and emails concerning which entity ODS, Aldridge, and Cammack believed to be the real party in interest, the Court must credit the email statements for the purpose of deciding the motion to dismiss. *See Ruiz*, 207 F.3d at 1356. As statements by opposing parties under Federal Rule of Evidence 801(d)(2), they are not hearsay.

amounts without disclosing Challenger had first sent lower amounts to ODS. Doc. 24-1 ¶ 23; Doc. 24-1 at 20–21. Sky issued a purchase order for Challenger directing all billing correspondence to be sent to Florida. Doc. 24-1 ¶ 23; Doc. 24-1 at 23–26. Sky issued the payment to Challenger from Florida. Doc. 24-1 ¶ 23; Doc. 24-1 at 27.

Before any agreement between Sky and ODS, Will Duett, Ltd., submitted a proposal to Aldridge, Aldridge added a per diem rate that Will Duett never proposed, and the defendants instructed Will Duett to bill Sky for daily per diems never owed. Doc. 24-1 ¶ 22. After Smith discovered the kickback scheme, Sky contacted Will Duett. Doc. 24-1 ¶ 22. Its principal, Ricky Michael, "admitted that Will Duett … was instructed to accept all fraudulent per diem payments for ultimate delivery to Defendants despite Defendants and Will Duett … having provided no services to earn the per diems[.]" Doc. 24-1 ¶ 22.

### 3.   *Two-Part Inquiry*

In a diversity action, a federal district court undertakes a two-part inquiry to decide if personal jurisdiction exists. *Mazer*, 556 F.3d at 1274. "[T]he exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id*. The steps are distinct. *Madara v. Hall*, 916 F.2d 1510, 1514–15 (11th Cir. 1990). The statute bestows broad jurisdiction; the Constitution is more restrictive. *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1215 (Fla. 2010).

### a.   Long-Arm Statute

The reach of a state's long-arm statute is a question of state law, and a federal district court must construe the statute as the state's highest court would. *Mazer*, 556 F.3d at 1274. Under Florida's long-arm statute, a defendant may be subject to specific jurisdiction (the action arises out of the defendant's contacts with Florida) or general jurisdiction (the action does not necessarily arise out of the defendant's contacts with Florida, but the defendant engages in substantial and not isolated activity in Florida).

Fla. Stat. § 48.193(1) & (2); *see Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.,* 137 S. Ct. 1773, 1779–80 (2017) (explaining difference between general and specific jurisdiction); *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015) (describing Florida's long-arm statute). Florida's long-arm statute lists acts that subject a defendant to specific jurisdiction. Fla. Stat. § 48.193(1)(a).

Sky does not contend the Court has general jurisdiction over any defendant. *See generally* Doc. 22 (amended complaint); Doc. 24 (response to motion to dismiss or transfer). Although Sky asserts in the amended complaint the Court has specific jurisdiction over ODS, Aldridge, and Cammack under Fla. Stat. §§ 48.193(1)(a)(1) ("Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state"), (a)(2) ("Committing a tortious act within this state"), (a)(6) ("Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state"), and (a)(7) ("Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state"), Doc. 22 ¶¶ 3–6, Sky argues in its response to the motion to dismiss or transfer the Court has specific jurisdiction over ODS under only (a)(1), (a)(2), and (a)(7), and over the remaining defendants under only (a)(2), Doc. 24 at 6–14. In the interest of judicial economy, this report and recommendation addresses only whether the Court has jurisdiction over all defendants under (a)(2) on the civil conspiracy claim.[12]

Under Fla. Stat. § 48.193(1)(a)(2), a person who personally or through an agent commits a tortious act in Florida submits himself to the jurisdiction of courts in Florida for any cause of action "arising from" commission of the tortious act in

---

[12]Under the doctrine of pendent personal jurisdiction, if the state's long-arm statute provides jurisdiction over the defendant on one claim, the court has jurisdiction to decide all claims against that defendant if they arose from the same "jurisdiction generating" event. *Cronin v. Wash. Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993). The defendants do not contend the claims did not arise from the same "jurisdiction generating" event.

Florida. "Arising from" means the act and cause of action have a "direct affiliation, nexus, or substantial connection." *Nw. Aircraft Capital Corp. v. Stewart*, 842 So. 2d 190, 194 (Fla. 5th DCA 2003). Proximate causation is unnecessary. *Id.*

"In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action."[13] *PVC*, 598 F.3d at 808 (internal quotation marks omitted). For specific jurisdiction under the tortious-act provision, an alleged tortfeasor's physical presence in Florida is unnecessary. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). When relying on telephonic, electronic, or written communications into Florida, if the answer to the "threshold question" of whether the pleading states a cause of action is yes, the next question is whether the cause of action arises from the communications. *Id.* "[T]here must be some connexity ... between the out-of-state communications and the cause of action such that the cause of action would depend upon proof of either the existence or the content of any of the communications into Florida." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (internal quotation marks and alterations omitted).

In Florida, civil conspiracy may be an independent tort. *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). The elements of a cause of action for civil conspiracy are: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) doing some overt act in pursuit of the conspiracy; and (4) damage to the plaintiff because of acts under the conspiracy. *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015).

---

[13]The parties do not address whether this Court should apply the Florida pleading standards or the more stringent federal pleading standards to determine if the allegations of the amended complaint state a cause of action for the purpose of deciding if jurisdiction exists under Florida's long-arm statute. The Court need not decide that issue because, at least with respect to the Challenger matter, Sky satisfies both standards.

There is no requirement that each co-conspirator commit an act in furtherance of the conspiracy; it suffices that each knows about the scheme and helps in some way. *MP, LLC v. Sterling Holding, LLC*, No. 3D15-1062, 2017 WL 2794218, at *2 (Fla. 3d DCA June 28, 2017) (to be published).

For a civil conspiracy claim, there generally must be an independent wrong or tort that would be a cause of action if by one person. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Within its cause of action for civil conspiracy, Sky incorporates its cause of action for fraud against OBI, Aldridge, and Cammack. Doc. 22 ¶¶ 94–100. The elements of a cause of action for fraud are (1) a false statement concerning a material fact, (2) knowledge of the one making the statement that it is false, (3) intention of the one making the statement that it will induce someone to act on the statement, and (4) resulting injury by the one acting in reliance on it. *Townsend v. Morton*, 36 So. 3d 865, 868 (Fla. 5th DCA 2010).

The "corporate shield" or "fiduciary shield" doctrine provides that an act by someone exclusively in his corporate capacity outside Florida may not be the basis for exercising jurisdiction over the employee in Florida. *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012). But the doctrine does not preclude the exercise of jurisdiction over an officer who commits fraud or other intentional misconduct outside Florida. *Id.* at 1088 n.3. And if "an individual, nonresident defendant commits negligent acts in Florida, whether on behalf of a corporate employer or not, the corporate shield doctrine does not operate as a bar to personal jurisdiction in Florida over the individual defendant." *Id.* at 1090. Furthermore, Florida's long-arm statute supports jurisdiction over any alleged conspirator if any other conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom jurisdiction is sought individually committed no act in Florida or had no relevant contact with Florida. *Mazer*, 556 F.3d at 1281–82.

Here, at a minimum, the allegations in the amended complaint state a cause of action against all defendants for civil conspiracy, with fraud relating to Challenger

as the independent wrong. At least for the latest motion to dismiss, the defendants do not really argue otherwise.[14] *See generally* Doc. 23.

The allegations, taken together and with reasonable inferences in Sky's favor, include the following. ODS, through Aldridge and Cammack, assured Sky that ODS was acting in Sky's best interest. Doc. 22 ¶ 22. ODS, through Cammack, sent Sky a spreadsheet with inflated amounts purportedly from Challenger knowing ODS was not acting in Sky's best interest, knowing Challenger was not actually charging Sky or Specialty the inflated amounts, and intending for Sky to approve a purchase order based on the assurance and the inflated amounts. Doc. 22 ¶¶ 28, 30–32, 68–73, 96; Doc. 22-2. Sky issued a purchase order—approved by Specialty—based on the assurance and the inflated amounts. Doc. 22 ¶¶ 28, 31–32, 68, 72–73; Doc. 22-2. Sky paid Challenger based on the inflated amounts, Challenger paid OBI the difference between the inflated amounts and the original amounts, and OBI paid Aldridge and Cammack that amount. Doc. 22 ¶¶ 28, 33–34, 72–73; Doc. 22-2. The defendants agreed to take those actions, and Sky suffered resulting damages in the form of overpayment to Challenger. Doc. 22 ¶¶ 95–97.

The cause of action for civil conspiracy to commit fraud arises from ODS's communications into Florida because the cause of action depends on the inflated amounts emailed by ODS, through Cammack, to Sky in Florida. *See* Doc. 24-1 ¶ 23; Doc. 24-1 at 20–21. That "connexity" suffices. *See* *Horizon*, 421 F.3d at 1168 (quoted). Because Florida's long-arm statute supports jurisdiction over any alleged conspirator

---

[14]The defendants summarily contend the "allegations amount to fraud and breach of contract resulting in damages sustained by the Nigerian entity," and add in a footnote, "How [Sky] is damaged by Defendants' alleged conduct when it did not own the oil rig and provided financial management of the upgrade is undefined by [Sky's] complaint and left to imagination and inference." Doc. 23 at 6 & n.10. In its response in opposition to the motion to dismiss or transfer, Sky observed the defendants "do not challenge whether a claim has been stated. Rather, the only challenge is that personal jurisdiction does not exist." Doc. 24 at 5–6. In their reply, the defendants do not contend otherwise. *See generally* Doc. 27.

if any other conspirator commits an act in Florida in furtherance of the conspiracy, it is unnecessary to show the other conspirators committed an act in Florida. *See Mazer*, 556 F.3d at 1281–82.

Sky thus satisfies Florida's long-arm statute regarding all defendants. *See Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 735 (Fla. 3d DCA 2006) ("O'Donnell's fraudulent misrepresentations made from outside Florida by phone, fax, and in writing, directed to IAS officers in IAS Florida headquarters, constitute tortious acts committed within Florida under Florida's long-arm statute. … Florida has long-arm jurisdiction because the IAS cause of action for fraud arises out of O'Donnell's fraudulent misrepresentations that he directed into Florida.").

Pointing to defamation and similar actions, the defendants contend, "When construing the connexity requirement, Florida courts uphold jurisdiction where the communications themselves are the tort for which the plaintiff seeks recovery." Doc. 23 at 13 (citing *Achievers Unlimited, Inc. v. Nutri Herb, Inc.*, 710 So. 2d 716 (Fla. 4th DCA 1998) (foreign distributor's statements in Florida and elsewhere that the plaintiff was not a good company and selling products directly to retailers as the alleged bases for defamation and conspiracy claims sufficed to establish personal jurisdiction under the tortious-act provision), and *Deloitte & Touche v. Gencor Indus., Inc.*, 929 So. 2d 678 (Fla. 5th DCA 2006) (foreign accountant's transmission of a false audit report to a firm in Florida as the alleged basis for professional negligence and negligent misrepresentation claims sufficed to establish personal jurisdiction under the tortious-act provision)). Those cases do not undermine that connexity may be established where, as here, the cause of action depends on proof of the existence or content of the communication into Florida. *See Horizon*, 421 F.3d at 1168.

The defendants contend Sky fails to "allege any specifics as required by Rule 9 as to any fraud or fraudulent misrepresentations occurring during Mr. Aldridge's one meeting with [Sky] in Florida." Doc. 23 at 6 (emphasis omitted). Because an alleged tortfeasor's physical presence in Florida is unnecessary for specific jurisdiction under

the tortious-act provision, that Sky fails to specify a misrepresentation during that meeting does not defeat jurisdiction over the defendants. *See Wendt*, 822 So. 2d at 1260.

The defendants argue that because a "Nigerian entity owned the subject rig and this Nigerian entity paid the bills and approved expenditures," their "activities, real or imagined, were directed to this entity, not [Sky]." Doc. 23 at 2 (emphasis omitted); *accord* Doc. 27 at 1–2. They add that Sky's "status as agent on behalf of a Nigerian barge owner" is uncontroverted and any contacts they had with Florida "are the fortuitous result of [Sky's] location in Florida while rendering services for a barge project in Louisiana." Doc. 27 at 4. Because the focus of personal jurisdiction is not on the one intended to be affected by the alleged tortious acts but on the alleged tortious acts in or into a state, whether the defendants intended the ultimate alleged harm to Specialty does not defeat personal jurisdiction.

For the Challenger matter, the defendants contend the "e-mails, Mr. Bakkes's affidavit, and purchase order prove [Sky] to be a contract and financial administrator acting on behalf of the barge owner" and Sky's "story shows the Nigerian barge owner as the victim of Defendants' alleged misconduct" such that Sky's "correspondence and payments from Florida become incidental to the alleged misconduct." Doc. 27 at 5. Because the focus of personal jurisdiction is not on a plaintiff's but on a defendant's actions in or into the state, Sky's actions do not defeat personal jurisdiction.

Exercising jurisdiction over the defendants is appropriate under the tortious-act provision of Florida's long-arm statute.

b.   Due Process

The Due Process Clause of the Fourteenth Amendment constrains a state's authority to bind a nonresident to a judgment of its courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A nonresident's physical presence in the state is not required, but the nonresident must have "certain minimum contacts …

such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Minimum contacts concern "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal quotation marks omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). And the connection must arise out of contacts the "defendant himself" creates with the state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis omitted). The "unilateral activity of another party or a third person is not an appropriate consideration[.]" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Minimum contacts also concern the defendant's contacts with the state, not his contact with people who reside there. *Walden*, 134 S. Ct. at 1122. Although a nonresident's physical presence in the state is not required, "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.*

A single act can support jurisdiction if "it creates a substantial connection with the forum." *Burger King*, 471 U.S. at 475 n.18 (internal quotation marks omitted). "Directing a conspiracy toward Florida establishes sufficient minimum contacts to satisfy due process"; a person can "reasonably anticipate being haled into a Florida court to answer for misrepresentations it made to a Florida resident to induce that resident to act." *Machtinger*, 937 So. 2d at 736 (internal quotation marks and quoted authority omitted).

A state's jurisdiction comports with traditional notions of fair play and substantial justice if the state's exercise of jurisdiction over the defendant is reasonable. *Burger King,* 471 U.S. at 477–78. If a defendant who purposefully

directed his activities at the state seeks to defeat jurisdiction, he must present a compelling case that some other consideration would render jurisdiction unreasonable. *Id.* at 477. Factors pertinent to reasonableness are: "the burden on the defendant" weighed against "the forum state's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292.

Considering all of the defendants' suit-related alleged conduct, they had minimum contacts with Florida. Aldridge traveled to Florida and met with Sky representatives to discuss ODS's provision of management services for the upgrade and later to negotiate terms between Sky and ODS. Doc. 22 ¶¶ 12, 18, 19; Doc. 23-2 ¶¶ 6, 10, 11; Doc. 24-1 ¶¶ 15, 19. Aldridge and Cammack emailed and telephoned Sky at its Florida office to induce Sky to award ODS the management-services contract. Doc. 24-1 ¶ 16. In negotiating contracts for Sky with prospective vendors, ODS, Aldridge, and Cammack included venue-selection clauses identifying Florida as the applicable law and jurisdiction, evidencing a willingness to travel to Florida in the event of a dispute involving them as witnesses. Doc. 24-6. In dealings relating to the upgrade, ODS, Aldridge, and Cammack contacted Sky through daily verbal, written, and electronic communications to Sky in Florida. Doc. 24-2 ¶¶ 9, 10. ODS, Aldridge, and Cammack "provided improperly inflated proposals, bids, and contracts"— including at least 25 "artificially inflated" proposals—to Sky's Florida office so Sky could finalize them and issue purchase orders. Doc. 22 ¶¶ 28–32; Doc. 24-1 ¶¶ 26, 28; Doc. 24-2 ¶ 11. The computer drive Cammack allegedly entered to erase evidence of the scheme was in Florida. Doc. 22 ¶ 43. For the Challenger matter, as an alleged overt act in furtherance of the alleged civil conspiracy, ODS, through Cammack, emailed Sky in Florida the quote with the inflated amounts. Doc. 24-1 ¶ 23; Doc. 24-1 at 20–21. And all defendants were part of an alleged conspiracy directed toward Florida. *See Machtinger*, 937 So. 2d at 736.

24

Exercising jurisdiction over the defendants is reasonable, and the defendants have not presented a compelling case to the contrary. On one side, Aldridge and Cammack will be burdened by having to travel to Florida for mediation and trial.[15] On the other side, because Sky's principal place of business is in Florida and its sole member is domiciled in Florida, Florida has an interest in adjudicating alleged torts committed against Sky and Sky has an interest in keeping the action here. And because this Court will have decided two motions to dismiss in this action—giving this Court a good understanding of the allegations and issues—it will be most efficient from a judicial economy standpoint to resolve the action here.

Balancing those considerations, jurisdiction over the defendants comports with traditional notions of fair play and substantial justice. *See Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se. LLC*, No. 3:13-cv-306-J-34JRK, 2014 WL 1268584, at *18–19 (M.D. Fla. Mar. 27, 2014) (unpublished) (finding the exercise of jurisdiction in Florida over a foreign limited liability company did not offend traditional notions of fair play and substantial justice where the plaintiff alleged a foreign company "knowingly caused injury to" plaintiff in Florida by sending communications to plaintiff in Florida intending to disrupt a business transaction); *LS Energia, Inc. v. Geva Eng'g Grp.*, No. 13-60296-CIV, 2013 WL 12145901, at *4 (S.D. Fla. Oct. 25, 2013) (unpublished) (finding the exercise of jurisdiction over a Puerto Rico corporation in Florida satisfied traditional notions of fair play and substantial justice where the plaintiff alleged the corporation made

---

[15]The defendants will not be substantially burdened by discovery because they can exchange documents electronically and Sky agrees any witness residing outside of Florida may appear for deposition by telephone or video. Doc. 24-1 ¶ 12. Furthermore, if the circumstances are appropriate, Aldridge and Cammack can seek depositions of themselves in Texas or here within a week of trial. *See* Local Rule 3.04(b) (providing guidance for the location of a deposition of a non-resident defendant). Although the defendants contend evidence "necessary for the defense is not in the current forum and is difficult to transport," Doc. 23 at 23, they do not identify any such evidence.

misrepresentations through phone calls and email that induced the plaintiff to wire money for nonexistent equipment).

The defendants contend Sky "alleges itself to be a citizen of Delaware" and emphasize Sky "**is not alleged to be a citizen of Florida**." Doc. 23 at 4 (emphasis in original). For that contention, they cite a paragraph in the amended complaint that provides, "SKY is a Delaware limited liability company that is authorized to and conducting business in the State of Florida."[16] Doc. 23 at 4 n.2 (citing Doc. 22 ¶ 1[17]). For diversity jurisdiction, a limited liability company is a citizen of any state of which a member of the company is a citizen, *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004), and a permanent resident alien domiciled in a state is treated the same as a citizen of that state sometimes, 28 U.S.C. § 1332(a)(2). Regardless of Sky's citizenship for diversity jurisdiction, it remains that because Sky's principal place of business is in Florida and its sole member is

---

[16]Sky cites *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330 (11th Cir. 2011) for the statement, "While Mr. Bakkes is a permanent resident of the United States, his citizenship for purposes of diversity jurisdiction lies in Florida since he permanently resides in Florida." Doc. 24 at 17. *Molinos* preceded a 2011 amendment that changed the language in § 1332(a) from, "For the purposes of this section, ... an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled," to "the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." Congress amended the statute because the "resident alien proviso" "created an arguable basis for expansion of alienage jurisdiction in other settings." *See* H.R. Rep. 112-10 § 101. The amended language accomplishes the intended goal of the original provision: preventing alienage jurisdiction as between a resident alien domiciled in a state and a United States citizen domiciled in the same state.

[17]Paragraph 1 of the amended complaint contains a statement of the alleged amount in controversy. *See* Doc. 22 ¶ 1. Based on the context of the defendants' citation, it is apparent they intended to cite paragraph 2. *See* Doc. 22 ¶ 2.

domiciled in Florida, Florida has an interest in adjudicating alleged torts committed against Sky and Sky has an interest in keeping the action here.

The defendants contend Specialty appears to be the real party in interest. Doc. 23 at 21. To the extent the defendants dispute that Sky itself has suffered damages, that dispute is best left for summary judgment.

Under the heading, "Exercise of Jurisdiction Does Not Comport with Due Process," in the reply to the response in opposition to the motion to dismiss or transfer, the defendants cite ten cases addressing personal jurisdiction and later add two as supplemental authority. Doc. 27 at 6–7 (citing ten cases); Doc. 31 (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017)); Doc. 32 (citing *Aegis Defense Servs., LLC v. Gilbert*, 222 So. 3d 656 (Fla. 5th DCA 2017). The cases include general statements of the law that applies (besides some general statements of law on general jurisdiction that do not apply), but none involve facts analogous to the facts in this case.

Exercising jurisdiction does not violate the Due Process Clause. Denial of the motion to dismiss for lack of personal jurisdiction is warranted.

## B.     Transfer

For the alternative argument the Court should transfer the action to the Southern District of Texas, the defendants contend Jacksonville is inconvenient for them and several key witnesses. Doc. 23 at 22–23. They point to their disclosure of 121 witnesses during jurisdictional discovery and contend only two are in Florida. Doc. 23 at 7 & n.11. According to them, all records of Aldridge, Cammack, the contractors, and the vendors concerning the upgrade are in Louisiana or Texas, Doc. 23-2 ¶¶ 26, 30; Doc. 23-3 ¶¶ 22, 26, and all third-party witnesses and documents are in Louisiana or Texas, Doc. 23-2 ¶ 26; Doc. 23-3 ¶ 22. They contend because third-party witnesses and documents are outside Florida, defending the action in Florida would "be very difficult, expensive and inefficient." Doc. 23-2 ¶ 27; Doc. 23-3 ¶ 23. They add defending the action in Florida would prevent them from compelling the

appearance of witnesses and expense would limit presenting witnesses willing to travel. Doc. 23-2 ¶ 28; Doc. 23-3 ¶ 24.

Sky responds the defendants fail to show its choice of forum is clearly outweighed by other considerations. Doc. 24 at 17–22. Sky observes five third-party witnesses are Florida residents (Bakkes, David Burns, Matthew Spatara, Jolanta Betlejewska, and Phillip Gibbs), Smith has stated willingness to travel to Florida to testify, and Sky agrees any witnesses who do not reside in Florida may appear for deposition or trial by telephone, video conference, or video recording. Doc. 24-1 ¶¶ 7, 12, 15. Sky adds that documents concerning allegations and damages are in Florida or on computers in Florida. Doc. 24-1 ¶¶ 10, 35–37; Doc. 22 ¶ 43.

28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Through § 1404(a), "Congress increased the efficiency of the federal court system [and] gave the district courts the discretion to override the plaintiff's traditional right to select his forum." *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1072 (11th Cir. 1987). A court may transfer an action even if it has no jurisdiction over the defendant. *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 992 n.16 (11th Cir. 1982).[18]

---

[18]Because transfer under § 1404(a) is proper only to a judicial district where it "might have been brought or to any district or division to which all parties have consented," the transferee court must be a proper venue and have jurisdiction over the defendant, assessed as of the time the action is brought, unless all parties consent. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (interpreting pre-2011 version of § 1404(a) without consent language).

The Southern District of Texas would be a proper venue and would have jurisdiction over the defendants, assessed on April 12, 2016, (when Sky brought the action) because they were all residents and citizens of Fort Bend County in the Southern District of Texas. Doc. 1 ¶¶ 7–10; Doc. 23-2 ¶¶ 3, 4; Doc. 23-3 ¶¶ 3, 4, 6; Doc. 23-4 ¶¶ 2–7; Doc. 23-5 ¶¶ 2–7; Doc. 23-7 ¶ 1; Doc. 23-8 ¶ 1.

A court may transfer venue on its own or on a motion by a party. *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011). If on a motion, the party seeking transfer must establish the requested venue is more convenient. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). To satisfy the burden, the party must show the plaintiff's choice of forum is "clearly outweighed" by other considerations. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

Whether the circumstances warrant transfer is "peculiarly one for the exercise of judgment by those in daily proximity to … delicate problems of trial litigation" and therefore left to the sound discretion of the district court. *Roofing & Sheet Metal Servs.*, 689 F.2d at 985. Factors include (1) the convenience of the witnesses, (2) the location of documents and relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) a forum's familiarity with the governing law, (8) the weight accorded a plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). If a transfer merely shifts inconvenience from the defendant to the plaintiff, transfer is unwarranted. *S.E.C. v. Lauer*, 478 F. App'x 550, 554 (11th Cir. 2012).

Transfer under § 1404(a) is unwarranted. Witnesses are in both districts. Doc. 24-1 ¶ 7; Doc. 23-2 ¶¶ 25, 26; Doc. 23-3 ¶¶ 21, 22. Documents are in both districts. Doc. 22 ¶ 43; Doc. 23-2 ¶¶ 26, 30; Doc. 23-3 ¶¶ 22, 26; Doc. 24-1 ¶¶ 10, 35–37. Florida is more convenient for one side; Texas is more convenient for the other side. Doc. 23-2 ¶ 27; Doc. 23-3 ¶ 23; Doc. 24-1 ¶ 5. The operative facts took place in Florida, Louisiana, and Texas. Doc. 22 ¶¶ 11, 12, 18, 19, 28–33; Doc. 23-2 ¶¶ 6, 10, 11; Doc. 23-3 ¶ 16; Doc. 23-6 at 5; Doc. 24-1 ¶¶ 15, 16, 19, 25–28, 31–34; Doc. 24-2 ¶¶ 9–11. The geographic limitations of subpoena power will affect witnesses for both sides no matter where the action proceeds. There is no suggestion one side has more

significant means. Because contract and tort laws do not vary significantly between jurisdictions and the alleged partial contract between ODS and Sky states it must be construed in accordance with Delaware or general maritime law, either court is well equipped to decide legal issues. Sky chose Florida to prosecute its action. There is no suggestion one court is more burdened than the other. And, again, because this Court will have decided two motions to dismiss—giving this Court a good understanding of the allegations and issues—it will be most efficient from a judicial economy standpoint to resolve the action here.

The defendants contend, "The obvious intent in prosecuting this action in this district is to deprive the fact-finder of live testimony from key witnesses with personal knowledge of the events made the basis of this claim." Doc. 23 at 2. In his affidavit, Bakkes counters, "As a direct result of the Defendants … conduct in and directed to the State of Florida, and because Sky has its principal place of business in Florida, Florida was chosen as the venue for this suit." Doc. 24-1 ¶ 5. The defendants provide no evidence to support their contention, and the most obvious reason to file the case here seems to be simply because Sky and its sole member are here.

The defendants argue, "Justice demands that, whenever reasonably possible, a defendant facing allegations of fraud and dishonesty be allowed the opportunity to defend himself at trial with live testimony from key witnesses." Doc. 23 at 3. They do not cite authority for this argument, *see generally* Doc. 23, and the Federal Rules of Civil Procedure contain no such requirement. The most important witnesses for the defense—Aldridge and Cammack—will be able to defend themselves through live testimony in front of a jury.

The defendants have not shown Sky's choice of forum is outweighed by other considerations, much less clearly so. Denial of the motion to transfer is warranted.

## V.    Recommendations[19]

I recommend:

(1)    **denying** the motion to dismiss, Doc. 23;

(2)    **denying** the motion to strike, Doc. 28;

(3)    **lifting** the stay of merits discovery, Doc. 21;

(4)    **directing** the parties to file an amended case management report by a date certain; and

(5)    after considering the case management report, **entering** a case management and scheduling order.

**Entered** in Jacksonville, Florida, on December 21, 2017.

_____

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Counsel of Record

---

[19]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.